**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

THOMAS H. OUTLAND,

                Petitioner,

        v.

THE ATTORNEY GENERAL OF THE
STATE OF NEW JERSEY AND PATRICK
NOGAN,

                Respondents.

Civil Action No. 23-3430 (JXN)

**OPINION**

**NEALS**, District Judge

Petitioner Thomas H. Outland ("Petitioner"), an individual currently confined at Northern State Prison in Newark, New Jersey, filed the instant petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Respondents filed an answer (ECF No. 12), and Petitioner replied (ECF No. 13). For the reasons expressed below, the Court denies the Petition and also denies a certificate of appealability.

**I.   BACKGROUND[1]**

The New Jersey Superior Court, Appellate Division, provided the following factual summary:

> [Petitioner] worked next door to a check cashing establishment and often took coffee in the morning to Claudia Cardenas, the check cashing employee. She worked in the rear where the safety deposit box was located, protected by a system of two security doors. Exterior video footage taken on the date of the robbery, April 30, 2014, depicts [Petitioner] walking towards and joining two hooded figures while holding a white object, similar in appearance to a paper cup. The group moves together towards the check cashing store and disappears inside. Moments later, the two hooded figures run out. Shortly thereafter, police cars arrive.

---

[1] The factual background is taken from the record submitted by the parties; the facts relevant to the individual claims for relief are discussed in the analysis section of the Opinion.

> Cardenas testified that on the morning of the robbery, [Petitioner] called in to her, and, as was her custom, she unlocked the outer security door to get the coffee. As she did so, a man forced the second security door open and punched her. She saw another man; both of their faces were covered by hoodies. Cardenas was punched in the face again and pushed down onto the floor. Approximately $35,000 was taken from the safe.

> When she next raised her head, Cardenas saw [Petitioner] near the door. She asked him to call the police, and he told her to calm down because the men were dangerous. A customer entered the store, and Cardenas again asked defendant to call 9-1-1, which he did.

*State v. Outland*, 458 N.J. Super. 357, 362-63 (App. Div. 2019).

Petitioner was charged with second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (Count One); second-degree robbery, N.J.S.A. 2C:15-1 (Count Two); and third-degree aggravated assault, N.J.S.A. 2C:12-1b(7) (Count Three). (ECF No. 12-2 at 34-35.) On May 25, 2016, following a jury trial presided over by the Honorable Scott J. Moynihan, J.S.C. ("Judge Moynihan"), Petitioner was convicted of conspiracy to commit robbery and robbery (Counts One and Two), and was acquitted of aggravated assault (Count Three). (*See id.* at 36-39.) On June 24, 2016, Judge Moynihan merged Counts One and Two for sentencing and sentenced Petitioner to a prison term of sixteen years with an 85% period of parole ineligibility pursuant to the No Early Release Act ("NERA"), N.J.S.A. § 2C:43-7.2 (*Id.* at 37.)

On January 17, 2017, Petitioner filed an Amended Notice of Appeal. (*Id.* at 40-43.) On March 20, 2019, the Appellate Division affirmed Petitioner's conviction. *Outland*, 458 N.J. Super. 357. The New Jersey Supreme Court denied Petitioner's petition for certification. *State v. Outland*, 239 N.J. 503 (2019). The United States Supreme Court denied Petitioner's writ of certiorari. *Outland v. N.J.*, 140 S.Ct. 1151 (2020).

Petitioner filed a petition for post-conviction relief ("PCR"), and on August 12, 2021, the PCR court denied the petition. (*See* ECF No. 1-2 at 26-68.) Petitioner appealed, and the Appellate

Division affirmed the denial on March 13, 2023. *State v. Outland*, No. A-0396-21, 2023 WL 2469850 (N.J. Super. Ct. App. Div. March 13, 2023). The New Jersey Supreme Court denied Petitioner's petition for certification. (ECF No. 12-19.)

Petitioner filed the instant Petition in June 2023. (ECF No. 1.) Respondents filed an answer (ECF No. 12), and Petitioner filed a reply (ECF No. 13).

## II.   **STANDARDS OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") 28 U.S.C. § 2254, provides that the district court "shall entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based on the record before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent, or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent

3

and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes, where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (*quoting Renico*, 559 U.S. at 773). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 574 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, to the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that

"[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

### III.   ANALYSIS

#### A.  Trial Court Error, Evidentiary Rulings (Ground One, subclaims a through d)

In Ground One, subclaims a through c, Petitioner argues that the trial court erred in permitting the state to introduce evidence of Petitioner's prior convictions after Petitioner introduced his 9-1-1 call into evidence. (ECF No. 1 at 14-17.) In Ground One, subclaim d, Petitioner challenges the limiting instruction given relevant to the introduction of his prior convictions. (*Id.* at 14.) Petitioner raises the following subclaims:

A.  [Petitioner's] [9-1-1] call was not hearsay because it was offered not for the truth of the statements therein but to disprove the testimony of the State's witness that . . . [Petitioner] had <u>not</u> called [9-1-1]. [New Jersey Rule of Evidence] ("N.J.R.E.") 80[6], which permits an opposing party to attack hearsay, was thus inapplicable.

B.  Regardless of the applicability of N.J.R.E. 806, the trial judge should have excluded the prior convictions under N.J.R.E. 403.

C.  Regardless of the applicability of N.J.R.E. 806, the trial judge should have excluded the prior convictions under N.J.R.E. 404(b).

D.  The trial court's limiting instruction was inadequate because it contradicted itself on whether the jury could impermissibly use the prior convictions as propensity evidence, to conclude that the [9-1-1] call was a part of a conspiracy by . . . [Petitioner].

(*Id.*)

Petitioner raised these claims on direct appeal, and the Appellate Division found them meritless. *See Outland*, 458 N.J. Super. 357. The Appellate Division provided the following relevant background:

After the State rested, [Petitioner] moved the 9-1-1 recording [of Petitioner's call to 9-1-1] into evidence and played the tape to the jury. Over the State's objection, the judge found the tape admissible as a present sense impression exception to the

5

> hearsay rule, N.J.R.E. 803(c)(1), and the excited utterance exception, N.J.R.E. 803(c)(2). The judge also ruled that if [Petitioner] played the tape to the jury, in rebuttal the State could play redacted portions of [Petitioner's] two recorded statements to police, and proffer his prior convictions.
>
> Defense counsel played the 9-1-1 tape. In rebuttal, the State moved into evidence [Petitioner's] sanitized criminal history of four prior indictable offenses and service of state prison time, and the two redacted statements.
>
> In the statements, [Petitioner] denied culpability, but discussed in detail how easy it would be to plan a robbery at the check cashing store because the employees were so "lax" about security, and their patterns of behavior so well established. He added, "if it was me and I knew that she opened the door like that, I could plan. I know how to plan around shit[.]"

*Id.* at 362-63.

### i.    *Ground One, subclaim a through c*

The Appellate Division denied Petitioner's claim that the trial court erred in finding his 9-1-1 recording was hearsay, which would have rendered N.J.R.E. 806 inapplicable. *Id.* at 364-69. The Appellate Division also denied Petitioner's claims that even if N.J.R.E. 806 was applicable, Petitioner's prior convictions should have been inadmissible under N.J.R.E. 403 and 404(b). *Id.* at 369-71.

First, the Appellate Division found meritless Petitioner's claim that the 9-1-1 recording was not hearsay and therefore the state should not have been permitted under N.J.R.E. 806 to introduce his sanitized criminal history to impeach Petitioner's credibility. *Id.* at 365-69. The Appellate Division stated the following:

> "Hearsay is generally inadmissible, N.J.R.E. 802, except if it falls within one of the hearsay exceptions." *State v. Williams*, 169 N.J. 349, 358, 777 A.2d 919 (2001) (citing *State v. Phelps*, 96 N.J. 500, 508, 476 A.2d 1199 (1984)). Statements that qualify as a present sense impression, N.J.R.E. 803(c)(1), or an excited utterance, N.J.R.E. 803(c)(2), are two such exceptions. *See* [*State v. Prall*, 231 N.J. 567, 585, 177 A.3d 755 (2018)]; *Gonzales v. Hugelmeyer*, 441 N.J. Super. 451, 458, 119 A.3d 932 (App. Div. 2015).

Where a party introduces hearsay, the declarant's credibility becomes an issue. Thus, N.J.R.E. 806 permits the admission of evidence impeaching the credibility of the hearsay declarant.

[Petitioner] contends that the 9-1-1 call was not hearsay, on the basis that it was moved into evidence solely to disprove Cardenas's testimony that [Petitioner] had not called 9-1-1. From that premise, [Petitioner] argues that [Petitioner's] prior criminal history should have been excluded as the rules do not permit impeachment of a declarant's non-hearsay statements. The premise, however, is not supported by the record. Cardenas did not deny that [Petitioner] called police—she only said that she asked him to do so and did not see him place the call.

The [trial] judge observed the call could be construed as:

> a bona fide excited utterance, present sense impression, or a premeditated attempt by . . . [Petitioner] to distan[ce] himself from his co-conspirators/princip[als]. If . . . [Petitioner] was not a conspirator/accomplice the call certainly qualifies under 803(c)(1) and (c)(2). The call was made within two minutes of the robbery. . . . [P]etitioner requested police assistance at the check cashing store explaining that a robbery had just occurred, an event which both sides agree . . . [Petitioner] had perceived. Likewise [Petitioner's] call related to a startling event, that is the robbery. [Petitioner's] voice indicated that he was still under the stress or excitement caused by the robbery. [ ] Cardenas's distraught crying and moaning in the background of the [9-1-1] call is certainly evidence that the robbery was still fresh in the minds of both she and . . . [Petitioner].

We agree. Trial counsel sought to have the tape admitted so the jury could hear [Petitioner's] tone and manner as evidence of his innocence. [Petitioner] wanted the jury to hear him, not to establish that a robbery occurred, but rather to demonstrate that he made a genuine 9-1-1 call as would any bystander or victim— and the trial judge agreed, after hearing it, that on the tape defendant sounded "excited and unreflective."

[Petitioner] played the recording to disprove any involvement in the conspiracy to commit the robbery. He wanted to proffer his distressed-sounding voice, recorded outside the courtroom, "to prove the truth of the matter asserted"—his innocence. *See* N.J.R.E. 801(c). "[T]he matter asserted" was not the event, but his lack of prior knowledge about it. Playing the tape for the jury to hear was, in effect, equivalent to making an assertion of innocence from the witness box.

*Id.* at 364-365. The Appellate Division noted that after finding the 9-1-1 call was admissible as an

exception to the hearsay rule, the trial judge explained that although Petitioner, "could not be

7

subjected to cross-examination," the State would be "afforded the opportunity to offer evidence regarding the credibility of the call using . . .[Petitioner's] prior convictions under [N.J.R.E.] 806." *Id.* at 365. Additionally, the trial judge "reminded trial counsel to review the decision with his client, to ensure [Petitioner] understood the patent risks of the jury hearing his criminal history." *Id.* at 366.

The Appellate Division explained that the trial judge based the decision to permit the State to introduce Petitioner's criminal history on N.J.R.E 806, "which states: 'the credibility of [a hearsay] declarant may be attacked, and if attacked may be supported, by <u>any</u> evidence which would be admissible for those purposes if the declarant had testified as a witness.' . . . This would permit, for example, a statement introduced under an exception to the hearsay rule to be impeached by evidence that the declarant had been convicted of a crime." *Id.* at 367 (citations omitted). The Appellate Division also noted that "[u]nder Federal Rule of Evidence 806, federal courts have allowed the admission of prior convictions to impeach the credibility of a hearsay declarant." *Id.*

Based on the above, the Appellate Division found the 9-1-1 call was hearsay and that pursuant to N.J.R.E. 806, the trial court did not err in allowing the State to proffer Petitioner's prior conviction. *Id.* at 368-69.

Next, the Appellate Division denied Petitioner's claim that, regardless of whether the prior conviction history was admissible under N.J.R.E. 806, the trial court should have excluded the conviction history under N.J.R.E. 403 and N.J.R.E. 404(b). *Id.* at 369-71. N.J.R.E. 403 provides:

> Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence.

The Appellate Division explained that the "'purpose of [an N.J.R.E.] 403 balancing is to determine whether the risk of prejudice to defendant in admitting the . . . evidence outweighs its

8

probative worth." *Id.* at 369 (quoting *State v. Long*, 173 N.J. 138, 161, 801 A.2d 221 (2002).) The

Appellate Division provided the following analysis:

> However, "[t]he mere possibility that evidence could be prejudicial does not justify its exclusion." [*State v. Morton*, 155 N.J. 383, 453-54, 715 A.2d 228 (1998).] "Even when evidence is 'highly damaging' to a defendant's case, 'this cannot by itself be a reason to exclude otherwise admissible and probative evidence.'" *State v. Brockington*, 439 N.J. Super. 311, 333, 108 A.3d 652 (App. Div. 2015) (quoting *State v. Frost*, 242 N.J. Super. 601, 620-21, 577 A.2d 1282 (App. Div. 1990)). Evidence is excluded for being unduly prejudicial only when its "'probative value is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation' of the issues in the case." *State v. Koskovich*, 168 N.J. 448, 486, 776 A.2d 144 (2001) (alteration in original) (quoting *State v. Thompson*, 59 N.J. 396, 421, 283 A.2d 513 (1971)).
>
> To exclude evidence under N.J.R.E. 403, the prejudice must <u>substantially outweigh</u> the probative value. *Ibid.*; *see also State v. Reddish*, 181 N.J. 553, 608-09, 859 A.2d 1173 (2004).
>
> Prior-conviction evidence carries the potential for "severe and unfair prejudice" to a criminal defendant. *State v. Hamilton*, 193 N.J. 255, 264, 937 A.2d 965 (2008). "The danger of conviction evidence is its capacity to prove a defendant's criminal propensity, turning a jury away from a proper consideration of the evidence." *Ibid.* (citing *State v. Sands*, 76 N.J. 127, 141, 386 A.2d 378 (1978)). "The prejudice inherent in other-crimes evidence, even when it is probative of a fact in issue, is that a jury, on hearing that evidence, may be influenced to return a guilty verdict because it considers the defendant to be a criminal." *State v. Brunson*, 132 N.J. 377, 384, 625 A.2d 1085 (1993).

*Outland*, 458 N.J. Super. at 369-370.

The Appellate Division found Petitioner's argument that the evidence should have been excluded under N.J.R.E. 403 meritless, noting that in playing the 9-1-1 call, Petitioner ensured that the jury "heard the sound of his voice and the emotion conveyed," and at the same time avoided "the riskier process of testifying." *Id.* at 370-71. The Appellate Division found that "although the introduction of the prior convictions may have affected the jury's assessment of his credibility, that impact, arguably prejudicial to his defense, did not outweigh the probative worth of the evidence," and it was not "unfairly prejudicial." *Id.* at 371.

9

The Appellate Division also denied Petitioner's claim that the admission of his prior convictions violated N.J.R.E. 404(b). The Appellate Division noted that N.J.R.E. 404(b) generally prohibits the admission of other crimes, wrongs, or acts and found an analysis pursuant to N.J.R.E. 404(b) and *State v. Cofield*, 127 N.J. 328, 605 A.2d 230 (1992), was unnecessary. *Id.* at 369 n 3. N.J.R.E. 404(b) provides:

> (b) Other Crimes, Wrongs, or Acts.
>
> (1) Prohibited Uses. Except as otherwise provided by Rule 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition.
>
> (2) Permitted Uses. This evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute.

As explained above, the Appellate Division had already found that Petitioner's prior convictions were properly admitted for impeachment purposes only. As his convictions were not admitted to show that Petitioner committed the crime based on his disposition, the Appellate Division found the claim did not warrant further discussion.

At the outset, the Court notes that challenges to the state court's evidentiary rulings under New Jersey Rules of Evidence do not raise federal habeas claims. The United States Supreme Court has held that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (U.S. 1990)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68 (quoting 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (U.S. 1975)).

A habeas petitioner, therefore, generally only states a cognizable claim for habeas relief based on the admission or preclusion of evidence in state court by showing that the decision in question denied him due process under the Fourteenth Amendment and deprived him of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair, it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). As such, the admission of evidence will only violate due process and warrant habeas relief where the admission of the evidence was so unduly prejudicial that it rendered the petitioner's trial fundamentally unfair.  *Glenn*, 743 F.3d at 407.

To the extent Petitioner brings his claims as challenges to the trial court's evidentiary rulings, they are not cognizable claims, and Petitioner is not entitled to habeas relief.

Additionally, Petitioner has failed to show that the admission of his hearsay statement, and, in turn, the admission of his prior convictions once Petitioner opened the door, was so arbitrary, prejudicial, or unreasonable that the statements could have rendered his trial fundamentally unfair. As noted above, the Appellate Division found no merit to Petitioner's argument that his 9-1-1 call was not hearsay, as trial counsel sought to have the call admitted so the jury could hear Petitioner's "tone and manner as evidence of his innocence." *Outland*, 458 N.J. Super at 365. Petitioner wanted the jury to hear that he "made a genuine 9-1-1 call as would any bystander or victim." *Id.* The Appellate Division explained that the trial court admitted the 9-1-1 call under the present sense

11

impression and excited utterance state law exceptions to the hearsay rules, and in doing so, the trial court warned Petitioner that if he chose to play the recording for the jury, the State would have the opportunity to offer evidence regarding the credibility of the call using his prior convictions. *Id.* The jury was able to hear Petitioner's emotion in the 9-1-1 call, and Petitioner avoided testifying and being cross-examined. Therefore, the Appellate Division found that the admission of Petitioner's prior convictions was not unfairly prejudicial. Petitioner has failed to show that the evidentiary decisions were so prejudicial that they rendered his trial "fundamentally unfair." *Glenn*, 743 F.3d at 407.  Petitioner is therefore not entitled to habeas relief on these claims.

  ii.     *Ground One, subclaim d*

The Appellate Division denied Petitioner's claim that the trial court's limiting instruction was inadequate because it contradicted itself on whether the jury could impermissibly use the prior convictions as propensity evidence, to conclude that Petitioner making the 9-1-1 call was a part of the conspiracy. *Outland*, 458 N.J. Super. at 371-373.

The Appellate Division quoted the following limiting instruction by the trial judge and noted that it tracked the model jury charge:

> Ladies and gentlemen [of the jury], you just heard evidence that [Petitioner] has previously been convicted of crimes. That evidence can be used by you only for a certain purpose, and that is in determining the credibility or believability of the <u>defense's case as evidenced by the [9-1-1] call</u>. Okay.
>
> So when defense puts in the [9-1-1] call, <u>the believability of . . . [Petitioner's] statement during that [9-1-1] call is in issue</u>, and you can use this evidence that you just heard regarding his convictions only for the purpose in judging the credibility or believability of that [9-1-1] call. You may not conclude that . . . [Petitioner] committed the crime charged or the crimes charged here in this case or is more likely to have committed the crimes charged simply because he committed crimes on a prior occasion.
>
> A jury has a right to consider whether a person who has previously failed to comply with society's rules, as demonstrated through criminal convictions, <u>would be more likely than not to ignore the oath requiring truthfulness on the witness stand</u> than a

12

person who's never been convicted of a crime. And you may consider in determining this issue the nature and the degree of the prior convictions and when they occurred.

Now, our law permits a conviction to be received in evidence only for the purpose of affecting the credibility of . . . [Petitioner] and for no other purpose. You are not, however, obligated to change your opinion as to the credibility of . . . [Petitioner] simply because of any prior conviction. You may consider such evidence along with all other factors we've previously discussed in determining the credibility of . . . [Petitioner].

Okay. Keep that in mind. That evidence is admitted only for a limited purpose.

*Id.* at 371-72 (emphasis in original).

The Appellate Division denied the instant claim as follows:

Where a defendant raises error in a jury instruction, the charge must be read as a whole. We do not consider just the allegedly erroneous portion. *State v. Wilbely*, 63 N.J. 420, 422, 307 A.2d 608 (1973). . . .

When a defendant fails to object to the instruction in the trial court, Rule 1:7-2 provides that a showing of plain error must be made. "[P]lain error requires demonstration of '[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" *State v. Burns*, 192 N.J. 312, 341, 929 A.2d 1041 (2007) (quoting *State v. Jordan*, 147 N.J. 409, 422, 688 A.2d 97 (1997) ); *see also State v. Brown*, 190 N.J. 144, 159-60, 919 A.2d 107 (2007) (failing to find plain error where the trial judge did not charge the jury regarding defendant's pre-arrest conduct and silence, which had been offered for impeachment purposes); *State v. Chapland*, 187 N.J. 275, 288-89, 901 A.2d 351 (2006). This instruction did not have the clear capacity to bring about an unjust result.

As [Petitioner] points out, there is the possibility that the jury may have woven [Petitioner's] prior criminal history into their deliberations in an impermissible manner. That possibility exists, however, in every trial in which a previously convicted defendant testifies, and his or her prior convictions are disclosed to the jury. Those juries are given the same model jury charge the trial judge gave here. The jury in this case, like in those instances, is assumed to follow the instruction and use the information for the limited purpose of the possible effect on credibility—and not for propensity. *State v. Marshall*, 173 N.J. 343, 355, 801 A.2d 1142 (2002) (citing *State v. Manley*, 54 N.J. 259, 271, 255 A.2d 193 (1969)).

13

> . . . Here, the judge thoroughly considered the matter, adequately instructed the jury about the purpose for which they were provided the information, and did not abuse his discretion by the admission of the evidence.

*Id.* at 372-73.

"Questions related to jury charges are normally matters of state law and are not cognizable in federal habeas review." *Paulino v. Ortiz*, No. 03–4463, 2005 WL 2922369, at *4 (D.N.J. Nov. 4, 2005); *see also Estelle*, 502 U.S. at 71–72 ("the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief"). Habeas relief is thus available only "when the absence of an instruction, or a defective instruction, infects the entire trial with unfairness." *See Albrecht*, 485 F.3d at 129 (citation omitted). The petitioner must demonstrate that the failure to include the limiting instruction was prejudicial. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). This burden is "even greater than the showing required to establish plain error on direct appeal." *Id.* Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* "[U]nless [the error] had [a] substantial and injurious effect or influence in determining the jury's verdict," it is deemed harmless. *See Adamson v. Cathel*, 633 F.3d 248, 259 (3d Cir. 2011) (quoting *Fry v. Pliler*, 551 U.S. 112, 116 (2007)).

Typically, in the context of jury instructions, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir.1997); *see also Sandstrom v. Montana*, 442 U.S. 510, 523 (1979) (instructions that suggest jury may convict without proving each element of crime beyond reasonable doubt violate constitutional rights of accused); *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (ambiguity, inconsistency or deficiency in instruction does not by itself necessarily constitute due process violation absent a

14

reasonable likelihood that jury applied instruction to relieve the state of its burden of proving each element of crime beyond reasonable doubt).

Here, the Appellate Division did not unreasonably apply clearly established federal law in denying Petitioner's jury charge claim and finding that the trial judge read the proper limiting instructions, which tracked the model jury charge on credibility and the use of prior conviction evidence. The Appellate Division noted that it must consider the overall instruction and found that it did not have the clear capacity to produce an unjust result.

The Court has reviewed the limiting instruction provided by the trial court and finds that the instruction, read as a whole, did not imply that the jury could impermissibly use the prior convictions as propensity evidence. Thus, nothing in the jury instruction rendered the trial unfair, and the Court denies relief on this claim. *Albrecht*, 485 F.3d at 129.

### B.  Ineffective Assistance of Counsel (Grounds Two, Three, Four, and Five)[2]

In Grounds Two, Three, Four, and Five, Petitioner brings claims of ineffective assistance of trial and direct appeal counsel. (*See* ECF No. 1 at 19-23.) Petitioner's claims are as follows:

Ground Two: [Trial] Counsel was Ineffective for . . . Failing to Seek Admission of Phone Records in Lieu of the [9-1-1] Tape.

Ground Three: [Trial] Counsel was Ineffective in Advising [Petitioner] on His Right to Testify.

Ground Four: [Trial] Counsel was Ineffective for Failing to Ensure that [Petitioner] was Present at Every Stage of His Trial.

---

[2] For clarity purposes, the Court has renumbered Petitioner's claims found in Addendum II, Ground I, b through e, as Grounds Two, Three, Four, and Five. (*See* ECF No. 1 at 19.) In Addendum II, Grounds II, III, and IV, which the court renumbers to Ground Six, Seven, and Eight, Petitioner raises the underlying constitutional companion arguments of the ineffective assistance of counsel claims. (*Id.*) On collateral appeal, the Appellate Division noted that the constitutional companion arguments make "essentially the same arguments [as the ineffective assistance of counsel claims]," and therefore, the Appellate Division addressed them together. *See Outland*, 2023 WL 2469850 at 3, fn. 1. Accordingly, the Court similarly addresses the companion claims in conjunction with the relevant ineffective assistance of counsel claim. The companion claims are as follows, Ground Two is Ground Seven: [Petitioner] was Deprived of His Constitutional Right to Present a Defense; Ground Three is Ground Six: [Petitioner] was Deprived of his Constitutional Right to Testify on His Own Behalf; Ground Four is Ground Eight: [Petitioner] was Denied His Constitutional Right to Due Process by Being Excluded from the Trial Proceedings.

> Ground Five: [Petitioner] was Denied the Effective Assistance of Appellate
> Counsel.

(*Id.* at 19.)

Petitioner raised these claims on collateral appeal. Following an evidentiary hearing at which trial counsel and Petitioner testified, the PCR court found the claims meritless. (*See* ECF No. 12-13 at 4-45; *see also* ECF No. 12-29.) The Appellate Division affirmed the PCR court's denial of the claims. *See Outland*, 2023 WL 2469850. The Court addresses Petitioner's ineffective assistance of counsel claims in turn.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective.  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690.  Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006)

(citing *Strickland*, 466 U.S. at 690–91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case.  The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below

17

*Strickland*'s standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 562 U.S. at 101). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 563 U.S. at 190). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

> i.    *Ineffective Assistance of Trial Counsel in Introducing the 9-1-1 Tape (Grounds Two and Seven)*

Petitioner argues in Ground Two that trial counsel was ineffective for introducing the recording of Petitioner's 9-1-1 call instead of using Petitioner's telephone records to show that he had placed a call to 9-1-1. (ECF No. 1 at 19, 21.) Petitioner argues that if trial counsel had introduced telephone records in lieu of the 9-1-1 call, "his previous criminal history would not have been introduced." (*Id.* at 21.) In Ground Seven, Petitioner raises the underlying constitutional claim and argues he was deprived of his constitutional right to present a defense. (*Id.* at 19.) Petitioner acknowledges that he is raising Ground Seven consolidated with his ineffective assistance of counsel claim. (*Id.* at 20n.1.)

Petitioner raised these claims on collateral appeal, and the PCR court denied the claim. (ECF No. 12-13 at 41-44.) The Appellate Division affirmed the PCR court's denial of the claim. *See Outland*, 2023 WL 2469850 at *4-6. The Appellate Division summarized the PCR court's ruling on this issue as follows:

> The [PCR] court opined "trial counsel's decision to introduce the [9-1-1] call was an effective mechanism for [Petitioner] to plead his innocence." The court cited to the trial record where trial counsel conferred with [Petitioner] to introduce the 9-1-1 call and concluded:

18

> [w]hile the context of the conversation is unknown, it is more than likely that trial counsel informed and obtained consent to move forward with introducing the [9-1-1] call. The record clearly shows that trial counsel wanted to obtain the permission of [Petitioner] prior to proceeding with moving forward with the [9-1-1] call.
>
> Based on the evidentiary hearing, the [PCR court] judge found trial counsel's testimony to be "credible, [straight-]forward, and not only was her relationship with [Petitioner] good . . . but every decision made during the trial was tactical and discussed with [Petitioner]." The judge also referenced [trial counsel's] years of experience as a public defender and involvement in a litany of criminal trials.

*Outland*, 2023 WL 2469850 at *4.

The Appellate Division found the trial counsel made a "reasonable, strategic decision to introduce the 9-1-1 call." *Id.* at *5. The Appellate Division found that trial counsel introduced the 9-1-1 call "'to get the jury to hear [Petitioner's] voice, his demeanor,' and to show [Petitioner] had not conspired in the robbery without subjecting him to cross-examination." *Id.* The Appellate Division noted that if the jury had found Petitioner credible in the 9-1-1 call, it may have resulted in his exoneration. *Id.*

The Appellate Division also found no indication that Petitioner objected to trial counsel's trial strategy of introducing the 9-1-1 call. *Id.* The Appellate Division quoted the following exchange between the court and trial counsel:

> THE COURT: I allowed in the [9-1-1] call but I also disclosed that it would be subject to impeachment by [Petitioner's] sanitized convictions and that the State I believe was also intending to offer certain portions of two statements made by [Petitioner] to the police, subject to [the N.J.R.E.] 104(c) hearing.
>
> And so I asked both [trial counsel] and [Petitioner] to discuss that aspect and to see if they still wanted the [9-1-1] call admitted.
>
> [TRIAL COUNSEL]: Judge, we did have that discussion and decided that we do indeed want the [c]ourt to admit or we do intend to have the [9-1-1 call played] in front of the jury.

*Id.*

19

Additionally, the next day, the following exchange took place:

THE COURT: All right. We're finally here, but where does that leave us? You want some time now that we know what's going to come in and if the [9-1-1] call comes in? You want some time to speak to [Petitioner] about that?

[TRIAL COUNSEL]: Just briefly if I could.

THE COURT: Sure, . . . that's the key question. We can't do anything without that. So let us know when you're ready.

[TRIAL COUNSEL]: Thank you.

. . .

THE COURT: All right. We're on the record. [Trial counsel], after speaking to [Petitioner], what's the defense's strategy?

[TRIAL COUNSEL]: Judge, the defense still intends to move forward with the [9-1-1].

*Id.*

The Appellate Division found that the record showed Petitioner understood the jury would be informed of his prior convictions, and the "purpose for admitting the call was to show the jury [Petitioner] had 'no opportunity to deliberate or fabricate' the robbery." *Id.* The Appellate Division affirmed the denial of the claim for "substantially the reasons set forth by the PCR court." *Id.* The PCR court ultimately denied the claim as follows:

> Trial counsel's decision to use the call was not an injustice to [Petitioner] nor inhibited him in a way that would show trial counsel's representation was egregiously inefficient such that the result would be different, or as the defense asserts, he would be acquitted. It is very clear by the record, trial transcripts, [Petitioner's] testimony, and trial counsel's testimony that the trial strategy was tactical and every stage was consented to by [Petitioner]. Therefore, this contention by [Petitioner] does not rise to the *Strickland*[] two-pronged test.

(ECF No. 12-13 at 44.)

Here, in finding counsel's performance was not deficient, the state courts did not violate clearly established law and were not unreasonable in their application of *Strickland*. At the PCR

20

evidentiary hearing, trial counsel testified that Petitioner did not ask her to admit the phone records instead of the 9-1-1 call. (ECF No. 12-26 at 17:24 to 18:4.) Trial counsel testified that admitting the 9-1-1 call "allow[ed] [Petitioner] to get his story out without having to take the stand." (*Id.* at 17:21-23.)  Counsel testified that she introduced the call "to get the jury to hear [Petitioner's] voice, his demeanor," and Petitioner sounded "sincere . . . [and] credible." (*Id.* at 18:11-17.) Trial counsel informed the PCR court that the call "humanize[d] [Petitioner] . . . [and] corroborate[d] [Petitioner's] story . . . [that] he was actually a victim of the robbery." (*Id.* at 18:18-22.) Additionally, as explained above, the trial court discussed on the record Petitioner's choice to admit the recording and provided counsel with an opportunity to speak to Petitioner regarding the decision. (ECF No. 12-26 at 64:5-24.) Based on the above, Petitioner fails to demonstrate that counsel's decision to admit into the evidence the recording of Petitioner's 9-1-1 call "fell below an objective standard of reasonableness." *Strickland*, 446 U.S. at 669.

Additionally, Petitioner has not established prejudice. To show prejudice, the petitioner would have to demonstrate a substantial likelihood of a different result.  *See Cullen*, 563 U.S. at 189.  Based on the trial court record, Petitioner cannot show that had trial counsel entered Petitioner's telephone records in lieu of the 9-1-1 recording, the jury would have acquitted Petitioner.

On habeas review, this Court must provide "double deference" to the state court's disposition of ineffective assistance of trial counsel claims.  *Davis v. Adm'r New Jersey State Prison*, 795 F. App'x 100, 102 (3d Cir. 2019), cert. denied sub nom. *Davis v. Johnson*, 140 S. Ct. 2748, 206 L. Ed. 2d 923 (2020) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Petitioner has not shown that the adjudication of his ineffective assistance of counsel claim by the

state court was contrary to, or involved an unreasonable application of, *Strickland* and its progeny. Habeas relief is thus denied as to Grounds Two and Seven.

  ii. *Ineffective Assistance of Trial Counsel in Apprising Petitioner of his Right to Testify (Grounds Three and Six)*

In Ground Three, Petitioner argues that he was deprived of effective assistance of counsel for advising Petitioner not to testify. (ECF No. 1 at 19.) Petitioner argues that trial counsel failed to advise him that he had a right to testify on his own behalf, and if he had been made aware of his right to testify, he would have elected to do so. (*Id.* at 21.) In Ground Six, Petitioner raises the underlying constitutional claim that he was denied his constitutional right to testify because of counsel. (*Id.* at 19.)

Petitioner raised these claims on collateral appeal, and the PCR court denied them. (ECF No. 12-13 at 30-14.) The Appellate Division affirmed the PCR court's denial of the claim, for substantially the same reasons as the PCR court. *See Outland*, 2023 WL 2469850 at *4-6. The Appellate Division summarized the PCR court's ruling on this issue as follows:

> Concerning the decision whether [Petitioner] would testify, the PCR court noted it was unpersuaded by [Petitioner's] allegation trial counsel disregarded his wishes. The court characterized [Petitioner's] claim as "disingenuous" based on the totality of the record and the testimony at the PCR hearing. Rather, the court believed the decision not to have him testify at trial was a joint strategy but it "did not go the way he wanted."

> Furthermore, the court opined "[Petitioner's] decision not to testify was clearly a tactical move by both [Petitioner] and trial counsel." The PCR court referenced our opinion on direct appeal where we noted, "[b]y playing the tape to the jury . . . [Petitioner] avoided the riskier process of testifying, while ensuring that the jury heard the sound of his voice and the emotion conveyed during the 9-1-1 call."

*Outland*, 2023 WL 2469850 at *4, quoting *Outland*, 458 N.J. Super. at 370-71. The Appellate Division added the following:

> "[A] criminal defendant is entitled to testify on [their] own behalf under Article I, paragraphs [one] and [ten] of our State Constitution." *State v. Savage*, 120 N.J. 594,

22

628 (1990). "As with any other constitutionally-based right, a defendant must knowingly waive the right." *State v. Ball*, 381 N.J. Super. 545, 556 (App. Div. 2005). However, when a defendant is represented by counsel, the court need not engage in a voir dire on the record to establish defendant's waiver. *State v. Bogus*, 223 N.J. Super. 409, 424 (App. Div. 1988) (citations omitted). Nevertheless, "the better practice [is] for a trial court to inquire of counsel whether [they have] advised a defendant . . . of [their] right to testify." *Savage*, 120 N.J. at 631. Further, "[i]t is the responsibility of a defendant's counsel, not the trial court, to advise defendant on whether or not to testify and to explain the tactical advantages and disadvantages of doing so or of not doing so." *Bogus*, 223 N.J. Super. at 423. Pursuant to these principles, we are satisfied based on the PCR court's findings [Petitioner] was apprised of this right and waived his right to testify.

*Id.* at *6.

This Court must apply AEDPA deference to the state court's decision unless it was contrary to or an unreasonable application of *Strickland*. *Branch v. Sweeney*, 758 F.3d 226, 233 (3d Cir. 2014). The state court found that trial counsel was not ineffective because Petitioner was advised of his right to testify and waived that right, so this Court must be "doubly deferential" on habeas review. *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) ("When the claim at issue is for ineffective assistance of counsel, AEDPA review is 'doubly deferential,' because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' In such circumstances, federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'") (quoting *Pinholster*, 563 U.S. at 190, *Burt v. Titlow*, 571 U.S. 12, 16 (2013)).

The record reflects that at the PCR hearing, trial counsel testified that she discussed with Petitioner the decision regarding whether to testify. (ECF No. 12-29 at 21:24 to 22:3.) Counsel testified that she discussed with Petitioner what his testimony would be, and she was able to see a "sneak peek" of what his testimony would be at the 104 hearing regarding admission of the 9-1-1 call. (*Id.* at 22:14-22.) Trial counsel testified that the discussion regarding whether he should testify was "greatly impacted" by "his performance on the stand during the 104 hearing." (*Id.* at 23:11-

23

15.) Trial counsel also testified that she did not "force, coerce, or threaten [Petitioner] in any way not to testify," but if he had wanted to testify, she would have "strongly counseled him against it." (*Id.* at 26:2-10.) Finally, she acknowledged that if Petitioner wanted to testify, it would have ultimately been his decision. (*Id.* at 27:7-15.) The state court reasonably found that, based on the totality of the record and the testimony at the PCR hearing, the decision not to have Petitioner testify at trial was a joint strategy, and that trial counsel was not ineffective.

The record supports the state court's conclusion that counsel advised Petitioner regarding his right to testify, and counsel was not ineffective for the trial strategy that Petitioner not testify. The state court's determination that trial counsel did not render ineffective assistance regarding Petitioner's decision not to testify was not an unreasonable application of *Strickland*. Consequently, Petitioner is not entitled to habeas relief on Grounds Three and Six.

> ### iii. Ineffective Assistance of Counsel for Failing to Ensure Petitioner's Presence at Every Stage of Trial (Grounds Four and Eight)

In Ground Four, Petitioner argues that trial counsel was ineffective for failing to ensure he was present at every stage of the trial. (ECF No. 1 at 19.) In Ground Eight, Petitioner argues the underlying constitutional claim that he was denied his right to be present at trial proceedings. (*Id.*)

On collateral appeal, the Appellate Division affirmed the PCR court's denial of the claim, noting the following:

> The [PCR] court initially addressed [Petitioner's] claims regarding his lack of presence "at every stage of the trial." The court held "even if . . . [Petitioner] was excluded from preliminary and informal discussions regarding the [9-1-1] call and the jury charge, his lack of presence [was] not out of the ordinary. While [Petitioner] may have wanted to be a part of every discussion, the [c]ourt recognizes that it is not always possible." The [PCR] court also concluded "[e]verything that was spoken about outside of the presence of . . . [Petitioner] was then brought to his attention, evidenced by the record . . . ."

*Outland*, 2023 WL 2469850 at *4-5. The Appellate Division found the following:

> Rule 3:16(b) provides unless a [Petitioner's] presence is waived, they "shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict . . . ." A defendant has the right to be present in the courtroom during every "critical stage" of the trial, "if his presence would contribute to the fairness of the procedure." *State v. Zenquis*, 251 N.J. Super. 358, 363-64 (App. Div. 1991). We are unpersuaded by [Petitioner's] contention he was not present for certain "critical stages" of the trial. Although there were in-chamber conferences, the record is replete with the substantive arguments and rulings on every issue in the underlying case, and [Petitioner] has not identified the discussion of any significant issue which did not take place on the record in his presence, which impacted the outcome of this case.

*Id.* at *6.

The right of an accused to be present and participate during all critical stages of the trial is fundamental. *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam) ("The constitutional right to presence is rooted in the Confrontation Clause of the Sixth Amendment but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him.") (citation omitted); *Rushen v. Spain*, 464 U.S. 114 (1983). A defendant is guaranteed the right to be present at any stage of a criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure. *See Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). A "critical stage" in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage. *Mempa v. Rhay,* 389 U.S. 128, 135 (1967). However, due process does not require a defendant's presence where "there is no indication that [the defendant] 'could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending.'" *Stincer*, 482 U.S. at 747 (quoting *Gagnon,* 470 U.S. at 527).

Here, the Court finds that the Appellate Division did not unreasonably apply clearly established federal law in finding that Petitioner was present at all "critical stages" of his criminal

proceedings. Moreover, Petitioner fails to elaborate on any critical stage for which he believes he was not present. Further, the state court noted that although Petitioner was not present for preliminary and informal discussions, the record makes it clear that "[e]verything that was spoken about outside of the presence of [Petitioner] was then brought to his attention" in court. (ECF No. 12-13 at 39.) The PCR court found that Petitioner failed to show that his lack of presence "prejudiced him enough to show he lacked information to make an informed decision or to show ineffective assistance of counsel wherein a different result would occur." (*Id.*) Petitioner has not shown that the adjudication of his ineffective assistance of counsel claim by the state court was contrary to, or involved an unreasonable application of, *Strickland*. As such, Grounds Four and Eight are denied.

### iv.   Ineffective Assistance of Appellate Counsel (Ground Five)

In his fifth ground for habeas relief, Petitioner argues that direct appeal counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims on direct appeal. (ECF No. 1 at 19.)

On collateral appeal, the Appellate Division denied this claim as follows:

Defendant is also entitled to the effective assistance of counsel on direct appeal. *State v. O'Neil*, 219 N.J. 598, 610 (2014); *see also State v. Morrison* (extending the *Strickland* standard to the assessment of claims of ineffectiveness of appellate counsel). 215 N.J. Super. 540, 545-46 (App. Div. 1987). Appellate counsel has no duty to raise every non-frivolous argument available to a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52. [Petitioner] claims appellate counsel should have presented the arguments raised in this PCR appeal. However, as discussed above, none of [Petitioner's] arguments warrant reversal, and [Petitioner] has not established a prima facie case to support an ineffective assistance of appellate counsel claim. Therefore, there was no basis for appellate counsel to advance arguments regarding these issues on appeal.

*Outland*, 2023 WL 2469850 at *6.

It is well settled that where a claim predicating ineffective assistance of counsel is meritless, the ineffective assistance of counsel claim is similarly meritless. *See Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998) (finding ineffective assistance of counsel claim was meritless because the underlying claim was meritless). Accordingly, the Court cannot find that direct appeal counsel was ineffective for failing to raise the meritless ineffective assistance of trial counsel claims. Therefore, the Appellate Division's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law; nor an unreasonable application of the facts. *See* 28 U.S.C. § 2254(d). Accordingly, Ground Five is denied as meritless.

### C. Cumulative Error (Ground Nine)

In Ground Nine, Petitioner claims that the cumulative effect of the errors raised in his Petition rendered his trial unfair. (ECF No. 1 at 20.)

"[E]rrors that individually do not warrant habeas relief may do so when combined." *Albrecht*, 485 F.3d at 139. However, "Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). The Court thoroughly reviewed Petitioner's direct and collateral appeal claims and the state court resolution of said claims and has found the state court decisions were not contrary to or an unreasonable application of federal law. Petitioner has failed to show he suffered prejudice from the purported errors, or that they rendered his trial unfair. "Thus, Petitioner has not proven that the alleged cumulative errors had 'a substantial and injurious effect or influence in determining the jury's verdict.'" *Thomas v. Johnson*, No. 18-0710, 2022 WL 603002, at *28 (D.N.J. Mar. 1, 2022) (quoting *Fahy v. Horn*, 516

F.3d 169, 205 (3d Cir. 2008)). As such, Petitioner is not entitled to habeas relief on Ground Nine, and this claim is denied.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a proceeding under 28 U.S.C. § 2254 unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court will deny Petitioner a certificate of appealability.

## V.    CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus (ECF No. 1) is **DENIED**, and a certificate of appealability **shall not issue**. An appropriate order will be entered.


DATED:    5/27/2026

_____
**JULIEN XAVIER NEALS**
**United States District Judge**

28